UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: ) | No. 11 B 34774 |
| ) | |
| STEPHEN and ANGELA BRISCO, ) | Chapter 13 |
| ) | |
| Debtors. ) | |
| ) | |
| STEPHEN and ANGELA BRISCO, ) | No. 12 A 00462 |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| STEPHEN and ANGELA BRISCO, ) | No. 12 A 00463 |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION ON DEFENDANT'S MOTION TO DISMISS
AMENDED COMPLAINTS**

Two adversary proceedings, Nos. 12 A 00462 and 12 A 00463 ("Brisco Proceedings"), are related to the Chapter 13 bankruptcy case filed by debtors-plaintiffs Stephen and Angela Brisco (the "Briscos"). The Briscos sued the Small Business Administration ("SBA") through the United States of America as defendant in two adversary proceedings seeking to classify the SBA's claim as unsecured pursuant to 11 U.S.C. § 506(a), to strip the SBA's lien from their primary residence and from a rental property pursuant to 11 U.S.C. § 506(d), and to modify the SBA's mortgage pursuant to 11 U.S.C. § 1322(b)(2).

1

## UNDISPUTED FACTS

The Briscos filed the present actions to void the liens of the SBA, the junior mortgagee, and classify its claims as unsecured claims under 11 U.S.C. § 506(a) and (d). They properly sued the United States as defendant though the Defendant is referred to below as the "SBA." In their bankruptcy schedules, they listed three secured creditors holding first, second, and third mortgages on their residence, as well as two secured creditors holding first and second mortgages on their rental property. Simultaneously with the filing of their petition, the Briscos filed their Chapter 13 plan, which was last modified on April 25, 2012, but is not yet confirmed. The deadline for filing of claims by governmental entities in this case was February 21, 2012. The SBA did not file a proof of claim regarding either the residence or the rental property, nor did the Briscos file proofs of claim on behalf of the United States as permitted by the Bankruptcy Code under 11 U.S.C. § 501(c). Under Fed. R. Bankr. P. 3002(c) a proof of claim of a governmental unit is timely filed if filed not later than 180 days after the date of the order for relief. Since the case was filed on August 25, 2011, the 180 day period has now expired.

JPMorgan Chase Bank, N.A. ("JPMorgan") holds a first mortgage lien on the residence and has a secured claim of $161,064.57 pursuant to its filed proof of claim. The United States holds a second mortgage lien on the residence with a secured claim of $25,800 pursuant to a recorded mortgage. An appraisal on the residence was conducted on June 20, 2011 and valued the residence at $135,000. (12 A 463 Compl. Ex. C) The Briscos filed a separate adversary proceeding No. 11 A 02419 to determine the validity, extent, and priority of JPMorgan's lien on the residential property.

JPMorgan also holds a first mortgage lien on the rental property and has a secured claim of $213,829 pursuant to a filed proof of claim. The United States holds a second mortgage lien on the residence with a secured claim of $25,700 pursuant to a recorded mortgage. An appraisal on the rental property was conducted on June 13, 2011 and valued the rental property at $100,000. The Briscos filed a separate Adversary proceeding No. 11-02657 to determine the validity, priority and extent of JPMorgan's lien on the rental property. On February 10, 2012, a final consent judgment was entered against JPMorgan reducing the value of its secured claim from $213,829 to the valuation of the

2

collateral rental property, i.e., $100,000, and reclassifying the undersecured portion of the claim as general unsecured.

The secured claims of the first mortgagee are alleged to exceed the value of both the residence and the rental property, leaving no remaining value in the either property to secure the SBA's liens. Therefore, the Briscos request that the SBA's claims should be classified as unsecured and its liens should be voided and modified through confirmation of and effective upon successful completion of their Chapter 13 Plan.

There are no issues of fact in dispute, resolution of this matter depends on the interplay between several sections of the Bankruptcy Code and precedent construing those provisions. For reasons stated below, the SBA's Motions to Dismiss will be granted by separate orders in each proceeding.

## **JURISDICTION**

District courts have exclusive jurisdiction over bankruptcy cases, pursuant to 28 U.S.C. § 1334(a), and they have concurrent jurisdiction over all civil proceedings "arising under" the Bankruptcy Code, pursuant to 28 U.S.C. § 1334(b). The determination of a creditor's secured status sought under § 506(a) "arises under" the Bankruptcy Code, and is within the District Court's jurisdiction. *See Wood v. Wood (In re Wood)*, 825 F.2d 90, 96 (5th Cir. 1987) ("Congress used the phrase 'arising under title 11' to describe those proceedings that involve a cause of action created or determined by a statutory provision of title 11.").

Pursuant to 28 U.S.C. § 157(a) and its own Internal Operating Procedure 15(a), the District Court for the Northern District of Illinois has referred its bankruptcy cases to the bankruptcy court of this district. When presiding over a referred case, the bankruptcy court has authorization under 28 U.S.C. § 157(b)(1) to enter appropriate orders and judgments as to core issues within the case. Determination as to the dischargeability of particular debts and the determination of the validity, extent, or priority of liens are core proceedings under 28 U.S.C. § 157(b)(2)(I) and (K), respectively. Proceedings "arising under" the Bankruptcy Code are core proceedings. *Id.*

Venue in each adversary proceeding lies under 28 U.S.C. § 1409(a).

## DISCUSSION

Standard Under Fed. R. Civ. P. 12(b)(6)

A motion to dismiss under Rule 12(b)(6) and Rule 12(c) accepts all well-pleaded allegations in the complaint as true and requires all reasonable inferences to be drawn in favor of the non-movant. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010); *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010); *Hayes v. City of Chicago*, 670 F.3d 810, 813 (7th Cir. 2010), *cert. denied*, 133 S. Ct. 353 (2012).

To survive a motion to dismiss under Rule 12(b)(6): "a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id., at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007)); *accord Reger*, 592 F.3d at 764. Under this standard, "a plaintiff must provide only enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief." *Id.* (quoting *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008)).

The Briscos, through their Complaints, effectively seek to cancel the SBA's liens pursuant to § 506(a) and § 1322(b)(2) because the secured claim of JPMorgan exceeds the value of the subject properties, leaving nothing to which the SBA's liens can attach. The Complaints also request that the SBA's claims be valued under Fed. R. Bankr. P. 3012.

**Failure to State a Claim under 11 U.S.C. § 506**

The SBA argues that the Briscos fail to state a claim under § 506 because Defendant is not the holder of an "allowed claim." As a result, it argues that its claim is not subject to classification under § 506(a) and avoidance under § 506(d).

At issue in this dispute is the following language from 11 U.S.C. § 506:

4

> (a)(1) An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent of the value of such creditor's interest . . . is less than the amount of such allowed claim.
>
> (d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless . . .
>> (2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

Subsection (a)(1) of the foregoing provision determines the extent to which an allowed claim is to be treated as a secured claim for Code purposes. The SBA argues that its claim is not subject to such determination here because it has not filed a proof of claim nor has one been filed on its behalf. Therefore, it argues, it cannot be a holder of an "allowed claim" under § 506(a)(1). If that is so, the SBA argues, then it is not possible through either proceeding to determine the secured status of its claim. If that cannot be determined, then its lien may not be cancelled and released through either proceeding as the Briscos seek.

A proof of claim timely filed is deemed allowed, unless a party in interest objects. 11 U.S.C. § 502(a). According to the SBA this means that the actual filing of a proof of claim (governed by 11 U.S.C. § 501(a)) is a condition precedent to allowance of a claim under § 502(a). If no proof of claim has been filed then there is no allowed claim subject to analysis and valuation under § 506(a).

The SBA has cited authority in support of its contention that filing a proof of claim is a prerequisite to judicial determination of secured status and valuation under § 506(a). Only bankruptcy court opinions have been cited to deal with this issue. In *In re King*, the bankruptcy judge vacated an order valuing a creditor's claim because the valuation occurred before a proof of claim was filed. 165 B.R. 296, 300 (Bankr. M.D. Fla. 1994). The debtors in that case proposed to pay through their Chapter 13 plan the true market value of a vehicle subject to a purchase money security interest. *Id.* at 297. They then filed a motion to value the security pursuant to Fed. R. Bankr. P. 3012. *Id.* The

5

creditor argued that valuation was premature because neither it nor the debtor had filed a proof of claim prior to the judge's determination of value. *Id.* at 298.

The Opinion in *King* considered whether the filing of a proof of a claim is a prerequisite to establishing the value of a security. *Id.* It concluded that:

> [t]he language of § 506 and rule 3012 indicates that Congress contemplated a claim being filed prior to a court establishing the value of a claim. Section 506 and rule 3012 speak in terms of valuing claims not collateral. Because an order valuing security values the claim and not the collateral, filing a proof of claim must precede the motion to value. It would be illogical to value something that does not yet exist."

*Id.* at 299. *King* has been followed by at least one other bankruptcy judge. *See In re Callahan*, 251 B.R. 170, 172–73 (Bankr. S.D. Fla. 2000).

The Briscos' attempt to distinguish the facts in *King* from those here is not effective. Contrary to their counsel's assertion, the *King* Opinion discussion on the necessity of filing a proof of claim was not *dicta*. Rather, the Opinion expressly ruled that lack of proof of claim rendered the prior valuation of the claim a nullity and vacated the order on that basis. *Id.* at 300.

The Briscos also argue other precedent in an attempt to show that filing of a proof of claim is not required to determine the secured status of the SBA's lien. Citing *In re Brager*, 28 B.R. 966, 967 (Bankr. E.D. Pa. 1983), a case decided under the prior version of § 506, the Briscos argue that the filing of an adversary proceeding serves the same purpose. In that case, the issue was whether the bankruptcy judge could determine the secured status of the creditor's claim under § 506(a) where no proof of claim was filed. *Id.* at 966–67. The Opinion in *Brager* concluded that filing of the Chapter 7 debtor's complaint to determine the secured status of the creditor's claim was a sufficient assertion of the claim and that the complaint itself triggered application of § 506(a). *Id.* at 967.

*Brager* reached that conclusion in part based on an outdated view from Collier on Bankruptcy. That older version stated,

> It would seem that the word "allowed" refers to the status of the claim following application of section 506(a) and not as a condition precedent to it. It would seem that the trustee or the creditor could commence an adversary proceeding under Rule 701(a) to determine the extent of a lien regardless of whether or not the lienor had filed a claim. The complaint

6

should be treated as a sufficient assertion of a claim to trigger application of section 506(a).

*Collier on Bankruptcy* ¶ 506.07, at 506–22 (15th ed. 1982). Subsequently, however, *Collier* has taken the view that § 506 "does not govern the allowance or disallowance of the underlying claim itself." *Collier on Bankruptcy* ¶ 506.01 (16th ed. 2012). Rather, "[r]ules governing the allowance of claims generally are provided in section 502." *Id.*

Plaintiffs might have filed a claim on behalf of the Defendant under 11 U.S.C. § 501(c), if it was filed within 180 days after the bankruptcy was filed. Fed. R. Bankr. P. 3002(c). The Briscos filed their bankruptcy case on August 25, 2011, so their time to file the claim has passed. Judicial notice is taken here of the fact that no party has filed a proof of claim on behalf of the SBA. A court may take judicial notice of matters of public record, including public court documents, without converting a Rule 12(b)(6) motion into a motion for summary judgment. *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994).

Under the better reasoned cases cited, no claim has been filed by or on the behalf of the SBA. Therefore, the SBA cannot be a holder of allowed claims subject to bifurcation under § 506(a) because its claims are not allowed under § 502. Accordingly, the Briscos Complaint fails to state a claim under that provision.

### Application of § 506(d) to the SBA's Liens

An aspect appears in the parties' briefs that requires discussion. In its Reply Memoranda in Support of its Motions to Dismiss the Brisco's Amended Adversary Complaints, the SBA states "[t]he plaintiff's response to the SBA's motion to dismiss, *relying on § 506(d)*, does not supply a basis for stating a claim for voiding the SBA's mortgage . . . ." (12 A 462, Reply 1; 12 A 463, Reply 1) (emphasis supplied). A review of the Brisco's Responses to the Motions reveals no such reliance on § 506(d) to void the SBA's lien. (*See* 12 A 462 Response; 12 A 463 Response) Furthermore, the Briscos do not rely on § 506(d) to void the SBA's mortgage in their Amended Complaints. Rather, they rely on §§ 506(a) and 1322(b)(2). The Amended Complaints also cite, without discussion as to its impact on these proceedings, Fed. R. Bankr. P. 3012.[1]

---

[1] Bankruptcy Rule 3012 provides: "The court may determine the value of a claim secured by a lien on property in which the estate has an interest on motion of any party in interest and after hearing on notice to

7

However, the Briscos do argue that § 506(d)(2) does not protect the SBA's lien from avoidance. Therefore, it is appropriate to discuss the impact of that provision, if any, on the relief sought by the Briscos. That section provides:

> (d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless . . .
> (2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

11 U.S.C. § 506(d)(2).

Under § 506(d), therefore, a lien may be voided that secures a claim if it is not an "allowed secured claim." There are two exceptions, however, only one of which matters here. Subsection (d)(2) provides that a lien may not be voided merely for failure to file a proof of claim.

The SBA argues that subsection (d)(2) applies in this proceeding because the only reason its mortgage is not an "allowed secured claim" is due to the failure of any entity to file a proof of such claim under § 501.

The Briscos do not argue that the SBA's lien is void under § 506(d)(2) merely because no proof of claim has been filed. Rather, they argue, the SBA's lien is not an "allowed secured claim" because there is no property to which the claim can attach.

The Briscos cite *In re Duncan* for the proposition that "where a creditor's claim is not allowed as secured '. . . due to absence of property in the estate to which the lien can attach, the lien is void.'" 60 B.R. 345, 347 (Bankr. M.D. Ala. 1986). The Briscos acknowledge that case is distinguishable on several grounds, including that the debtor sought to void a lien in Chapter 7. That distinction is critical here. *Duncan* was decided before the Supreme Court considered the relationship between §§ 506(a) and (d)(2) in *Dewsnup v. Timm*, 502 U.S. 410 (1992).

In *Dewsnup*, the Chapter 7 debtor commenced an adversary proceeding to determine the validity and extent of a creditor's claim of about $120,000 on her property. *Id.* at 413. Upon the bankruptcy filing, the land was valued far below the amount of the

---

the holder of the secured claim and any other entity that the court may direct." The rule therefore treats determination of secured status as a contested matter, which is governed by Fed. R. Bankr. P. 9014.

8

debt owed. *Id.* Dewsnup therefore requested the Bankruptcy Court to reduce the first lien to the fair market value of the land under § 506(d) of the Bankruptcy Code. *Id.*

The issue considered by the Supreme Court was whether the first mortgage should be considered an "allowed secured claim" under § 506(d) even though the amount of the claim far exceeded the fair market value of the collateral, so that the debtor would be able to reduce the secured debt to the fair market value of the land. *Id.* at 411.

The lien holder, joined by the United States as *amicus curiae*, asserted that the words "allowed secured claim" in § 506(d) should be interpreted without reference to § 506(a), which is not a definitional provision. *Id.* at 415. Thus, it contended that the phrase "allowed secured claim" should be read term-by-term to refer to a claim that is, first allowed, and then, second, secured. *Id.* Section 506(d) was argued to be limited in application to those claims that have not been allowed and secured. *Id.* The creditor maintained that its debt was secured because there was a lien with recourse to the underlying collateral, and therefore, regardless of the value of the underlying collateral, the claim did not come within the scope of § 506(d). *Id.*

The *Dewsnup* Opinion agreed with the lender's position and held "that § 506(d) does not allow petitioner to 'strip down' [Timm's] lien, because [Timm's] claim is secured by a lien and has been fully allowed pursuant to § 502." *Id.* at 417. The Opinion found that the words "allowed secured claim" did not embody the same meaning in § 506(d) as in § 506(a). *Id.* at 417. It explained that § 506(d) cannot be read to void a lien merely because it is determined under § 506(a) to be unsupported by collateral value. *Id.* Rather, § 506(d) is properly considered separate from § 506(a) and "voids only liens corresponding to claims that have *not* been allowed and secured." *Id.* at 415 (emphasis in original).

*Dewsnup* based this determination on two grounds. First, it found that the debtor's position—to freeze the creditor's secured interest at the judicially determined valuation— would result in a "windfall" to the benefit of the debtor if there was an increase in the value of the property by the time of the foreclosure sale. *Id.* at 417. Second, the Opinion stated that Congress likely did not intend to depart from the pre-Code rule that a creditor's liens on real property pass through bankruptcy unaffected. *Id.* at 419; *see Johnson v. Home State Bank*, 501 U.S. 78, 84 (1991) ("Rather, a bankruptcy discharge extinguishes

9

only one mode of enforcing a claim—namely, an action against the debtor *in personam*—while leaving intact another-namely, an action against the debtor *in rem.*").

The SBA does not have an "allowed claim" here so determination of secured status cannot be made under § 506(a). Therefore, without more, its liens pass through the bankruptcy unaffected. *See In re Henninger*, 53 B.R. 60, 62 (Bankr. W.D.N.Y. 1985).

### The SBA's Arguments do not Lead to Absurd Results

The Briscos argue that the SBA'a failure to file a proof of claim, thereby allowing its lien to pass through the bankruptcy unaffected, leads to an absurd result. They argue that the SBA cannot benefit in such a way by refusing to participate in the bankruptcy process. First of all, the SBA has repeatedly emphasized that under 11 U.S.C. § 501(c) and Fed. R. Bankr. P. 3004, a debtor or trustee is authorized to file a proof of claim on behalf of a non-filing creditor. If the Briscos wanted a § 506(a) determination as to the SBA's claim, they could have filed a proof of claim on its behalf. The Briscos had every opportunity to do so but did not.

Secondly, the Briscos argue that a creditor's lack of participation does not shield it from the bankruptcy process. They argue a Seventh Circuit Opinion, *In re Pence*, rejected such a result. 905 F.2d 1107 (7th Cir. 1990). However, *Pence* is distinguishable on several grounds as it involved an effort by a secured creditor to revoke confirmation of a Chapter 13 debtor's plan. *Id.* at 1108. The creditor in that case had not objected to the plan prior to confirmation but did so after confirmation upon receipt of a new valuation of certain property pledged to it under the plan. *Id.* at 1109. The *Pence* Opinion rebuffed the creditor's attempt to revoke confirmation on the basis that the creditor may have not received written notice of the confirmation hearing. *Id.* The Opinion stated that the creditor had actual notice of the debtor's bankruptcy and should have known that a plan was due within fifteen days of the bankruptcy filing. *Id.* It further stated that the creditor "was not entitled to stick its head in the sand and pretend it would not lose any rights by not participating in the proceedings." *Id.*

The SBA's level of participation in this case is very different from that of the creditor in *Pence*. The SBA has vigorously defended itself against the Briscos' attempts to cancel its lien. Its failure to file a proof of claim does not limit its rights. Nothing in the Bankruptcy Code or Rules requires a secured creditor to file a claim. Section 501's use of

the word "may" illustrates the provision's permissive nature. *In re Schaffer*, 173 B.R. 393, 395 (Bankr. N.D. Ill. 1994). A reason for not requiring the filing of a claim by a secured creditor is that the creditor "may ignore the bankruptcy proceeding and look to the lien for the satisfaction of the debt." *In re King*, 165 B.R. 296, 299 (Bankr. M.D. Fla. 1994). The Supreme Court in *Dewsnup v. Timm*, emphasized that reasoning by concluding that failure to file does not affect a lien's validity. 502 U.S. 410, 418 (1992)

However, there are certain circumstances warranting the filing of a proof of claim by a secured creditor. One is when a secured creditor seeks distribution from the Chapter 13 plan. *In re Alderman*, 150 Bankr. 246 (Bankr. D. Mont. 1993); *see also In re Wells*, 125 Bankr. 297, 300 (Bankr. D. Colo. 1991); *In re Thomas*, 91 Bankr. 117, 121 n.9 (Bankr. N.D. Ala. 1988) *aff'd* 883 F.2d 991 (11th Cir. 1989); *In re Van Hierden*, 87 Bankr. 563, 564 (Bankr. E.D. Wis. 1988); *In re Rogers*, 57 Bankr. 170, 172-73 (Bankr. E.D. Tenn. 1986). The *Alderman* Opinion agreed that "in order for a secured claim to receive a distribution under a Plan pursuant to F.R.B.P. 3021, it must first be allowed pursuant to 502(a)." *Alderman*, 150 B.R. at 251; *In re Schaffer*, 173 B.R. 393, 395 (Bankr. N.D. Ill. 1994); Fed. R. Bankr. P. 3021. The SBA does not have an allowed claim so it may not receive any distribution under the Briscos' plan.

**Failure to State a Claim Under 11 U.S.C. § 1322(b)(2)**

The Briscos need not rely on § 506 to modify the SBA's lien. Other provisions of the Code authorize a plan proponent to modify the rights of the lienholder. In this case, § 1322(b)(2) is argued to provide the relief the Briscos seek. Chapter 13 debtors may modify the rights of creditors holding secured claims through a plan of reorganization, subject to the requirements of 11 U.S.C. § 1325(a). However, 11 U.S.C. § 1322(b)(2) prohibits modification of the rights of a holder of a claim secured only by a security interest in the debtor's principal residence. Nevertheless, as discussed below, it is well established that wholly unsecured junior liens can be "stripped off" in a Chapter 13 case.

Lien stripping is a doctrine that may be used to void a lien that is not fully supported by value in the collateral or not supported by any value in the collateral. "Strip off" is not mentioned, let alone defined in the Bankruptcy Code, but the term is commonly used when a debt is partially secured and partially unsecured to cancel a wholly unsecured lien in its entirety. The Supreme Court has twice addressed the issue of

11

stripping mortgage liens on a bankruptcy debtor's residential property. *See Dewsnup v. Timm,* 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992) and *In re Nobelman,* 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993). Both of these cases addressed whether an *undersecured senior* mortgage may be "stripped down" by reducing the secured value of liens where there was some but not adequate collateral underlying the lien. *Dewsnup,* as described earlier, dealt with a Chapter 7 case and relied on interpretation of the phrase "allowed secured claim" in § 506(d). On the other hand, *Nobelman* dealt with a Chapter 13 case and, thus, interpreted a Chapter 13 specific statute—§ 1332(b)(2). *Nobelman* defined "allowed secured claim" in light of § 506(a), which the *Dewsnup* Court did not do.

Section 1322(b)(2) provides:

> Subject to subsections (a) and (c) of this section, the plan may –
>
>> (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims . . . .

This provision, in conjunction with § 506 authorizes a Chapter 13 debtor through a confirmed plan to "strip off" wholly unsecured junior liens, as the Briscos seek to accomplish through their Adversary Complaints. This is permitted despite the provision's prohibition against modification of claims "secured only by a security interest in real property that is the debtor's principal residence." That clause, is referred to as the "antimodification clause."

Although the Seventh Circuit has not considered the issue, most Circuit Courts of Appeal, including the Second, Third, Fifth, Sixth, Ninth, and Eleventh Circuit Courts of Appeals, have permitted the strip off of wholly unsecured junior liens on a Chapter 13 debtor's principal residence. *In re Pond,* 252 F.3d 122 (2nd Cir. 2001); *In re McDonald,* 205 F.3d 606 (3d Cir. 2000), *cert. denied,* 531 U.S. 822 (2000); *In re Bartee,* 212 F.3d 277 (5th Cir. 2000); *In re Lane,* 280 F.3d 663 (6th Cir. 2002); *In re Zimmer,* 313 F.3d 1220, 1227 (9th Cir. 2002); *In re Tanner,* 217 F.3d 1357 (11th Cir. 2000). The Bankruptcy Appellate Panel for the First Circuit has also adopted the reasoning of these courts. *In re Mann,* 249 B.R. 831 (B.A.P. 1st Cir. 2000). In addition, at

least one District Court Judge and three bankruptcy judges, including the undersigned, in this Circuit have adopted the reasoning of the majority position's treatment of wholly unsecured junior liens on a debtor's principal residence. *In re Holloway,* No. 2001 U.S. Dist. LEXIS 16898, 2001 WL 1249053 (N.D. Ill. Oct. 16, 2001) (Darrah, J.); *In re Ginther,* 427 B.R. 450 (2010) (Barbosa, J.); *In re Waters,* 276 B.R. 879 (2002) (Squires, J.); *Melgoza v. Washington Fed. Bank for Savings (In re Melgoza)*, No. 11 A 00328, 2011 Bankr. LEXIS 3257, at *10–11 (Bankr. N.D. Ill. 2011) (Schmetterer, J.).

Each of the forgoing Opinions analyze in detail implications of the Supreme Court decision in *Nobelman v. American Savings Bank,* 508 U.S. 324 (1993). The *Nobleman* Opinion rejected the practice of many lower courts to strip-down *undersecured* mortgages on a Chapter 13 debtor's principal residence. *See id.; In re Bellamy,* 962 F.2d 176 (2d Cir. 1992); *In re Hart,* 923 F.2d 1410 (10th Cir. 1991); *Wilson v. Commonwealth Mortgage Corp.,* 895 F.2d 123 (3d Cir. 1990); *In re Hougland,* 886 F.2d 1182 (9th Cir. 1989). At issue in *Nobelman* was whether a partially secured claim secured by a lien on a debtor's principal residence could be bifurcated into secured and unsecured components in order to "strip down" the value of the secured claim. *Nobelman,* 508 U.S. at 326. The debtors in *Nobelman* argued that § 506(a) limited recovery for the holder of a secured claim to the portion of the claim that is supported by the value of the property where the claim value exceeds the value of the underlying property. *Id.* Section 506(a) was used, therefore, to divide a mortgage into secured and unsecured portions, prohibiting modification of only the secured portion. *See id.*

*Nobelman* rejected this approach, emphasizing the "rights of holders of secured claims" that are secured only by a security interest in a Chapter 13 debtor's principal residence. *Id.* at 330. Therefore, the basis for protecting the secured portion of the creditor's claim was the existence of valid mortgage documents furnishing state-law rights in the collateral. *Id.* at 329. In *Nobelman,* protection of the creditor's unsecured portion of the claim was not based on actual value of the property supporting the lien. *Id.* at 330. According to the Opinion, the protection afforded to home mortgage lenders under § 1322(b)(2) begins with a judicial valuation under § 506(a). *See id.* at 328.

The SBA argues that the Briscos fail to state a claim under 11 U.S.C. § 1322(b)(2) because it is not the holder of an "allowed claim" and so its claim is not subject to

classification under § 506(a). That step, the SBA argues, must occur before its claim can be modified under § 1322(b)(2). The SBA reasons that § 1322(b)(2) has no statutory mechanism for determining whether a claim is secured or not.

The Briscos argue that, because the SBA is not the holder of a "secured claim," its mortgage rights may be modified pursuant to 11 U.S.C. § 1322(b)(2). Courts that allow the strip off of wholly unsecured junior liens have considered together two provisions in the Bankruptcy Code. First, § 506(a) is used to categorize allowed claims as either secured or unsecured, according to the value of the underlying collateral. *In re Bartee,* 212 F.3d at 284 (*citing Collier on Bankruptcy* ¶ 506.03). Under the Bankruptcy Code, "secured claim" is a term of art. *Zimmer,* 313 F.3d at 1223. Thus, not every claim secured by a recorded lien on the property will be a "secured claim." *Id.*

The SBA argues that such determination must be pursuant to § 506(a). Each Circuit to have considered the strip-off of wholly unsecured junior mortgages has looked first to § 506(a) to determine whether the mortgage is "secured" for purposes of § 1322(b)(2). *In re Pond,* 252 F.3d 122, 126 (2nd Cir. 2001); *In re McDonald,* 205 F.3d 606, 610 (3d Cir. 2000); *In re Bartee,* 212 F.3d 277 (5th Cir. 2000); *In re Lane,* 280 F.3d 663 (6th Cir. 2002); *In re Zimmer,* 313 F.3d 1220, 1227 (9th Cir. 2002); *In re Tanner,* 217 F.3d 1357 (11th Cir. 2000). The reasoning in *McDonald* is typical. That Opinion quoted *Nobleman,* wherein it was stated that it is "correct to look to § 506(a) for a judicial valuation of the collateral to determine the status of the bank's secured claim." *McDonald,* 205 F.3d at 609 (quoting *In re Nobleman,* 508 U.S. at 324, 329 (1993)).[2]

The *McDonald* Opinion considered in detail the import of § 506(a) in stripping-off a wholly unsecured mortgage under § 1322(b)(2). It recognized that, in *Nobleman,* the Supreme Court rejected the Fifth Circuit's view that § 506(a) was inapplicable in stripping a lien. *McDonald,* 205 F.3d at 611. The *McDonald* Opinion concluded that

---

[2] The Supreme Court has explained that "subsection (a) of § 506 provides that a claim is secured only to the extent of the *value of the property* on which the lien is fixed." *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 239 (1989) (emphasis added); *see also Associates Commercial Corp. v. Rash,* 520 U.S. 953, 961 (1997) ("The first sentence of § 506(a), in its entirety, tells us that . . . the secured portion of a claim is limited to the value of the collateral."). Accordingly, to determine whether a lien is "secured" under Section 506(a), a court must examine the value of the collateral underlying a lien, not the value of the lien itself. *Pond v. Farm Specialist Realty (In re Pond),* 252 F.3d 122, 126-27 (2d. Cir. 2001).

14

§ 506(a) is essential to determination of secured status for purposes of the antimodification clause in § 1322(b)(2). *Id.* It found support for this conclusion in the Supreme Court's Opinion in *Nobleman* stating that the debtors "were correct in looking to § 506(a) for a judicial valuation of the collateral to determine the status of the bank's secured claim." *Id.* (citing *Nobleman*, 508 U.S. at 328).

As a result, it is not possible to determine in these Adversary Proceedings the secured status of the SBA's lien under § 506(a). That means that modification of the SBA's lien is not possible under § 1322(b)(2) through these proceedings. Therefore, the Briscos have failed to state a claim under § 1322(b)(2).

Treatment of the SBA's Lien in the Briscos' Plan

However, the foregoing discussion does not mean that the SBA's lien cannot be dealt with through the Briscos' plan. The reorganization provisions of Chapter 13 provide the mechanism for the so-called "strip-off" of liens. *In re Lane*, 280 F.3d 663, 665 (6th Cir. 2002); *In re Jarvis*, 390 B.R. 600, 603 (Bankr. C.D. Ill. 2008). Mandatory provisions in Chapter 13 plans, which are provided for in § 1322(a), are in contrast to the provisions permitted in § 1322(b). According to *Collier on Bankruptcy*, "[t]he flexibility permitted in the formulation of chapter 13 plans is central to the implementation of the congressional goal of encouraging use of chapter 13." ¶ 1322.01 (citing H.R. Rep. No. 595, 95th Cong., 1st Sess. 117–18 (1977)). Accordingly, to the extent that a plan provision is expressly mandated or prohibited, there is no specified form that a plan must take. *Id.* (citing *In re Parker*, 15 B.R. 980 (Bankr. E.D. Tenn. 1981); *aff'd* 21 B.R. 692 (E.D. Tenn. 1982)). Rather, debtors are permitted to tailor their plans as needed. *Id.*

There is authority for treatment of debts through a plan of reorganization where no proof of claim has been filed on the debt. In *Dixon v. IRS (In re Dixon)*, 218 B.R. 150 (B.A.P. 10th Cir. 1998) (citing cases). In *Dixon*, the IRS appealed a bankruptcy judge's ruling that the IRS had to return money it collected from the debtors after they had received a discharge in Chapter 13. *Id.* at 150. The debtors listed a debt owed to the IRS and proposed to pay the debt as an unsecured priority claim but did not file a proof of claim. *Id.* at 151. The IRS also did not file a proof of claim in that case. *Id.* Because no proof of claim was filed, the IRS claim was not an allowed claim able to receive payments under the debtors' plan. *Id.* The IRS therefore did not receive any payments

15

under the plan. *Id.* The IRS argued in part that its failure to file a claim meant that its debt would survive the Chapter 13 discharge. *Id.* at 153. The bankruptcy judge noted that the IRS could not point to any provision in the Code that would make its claim survive. *Id.*

The bankruptcy judge in *Dixon* also opined that there was no provision in the Code that expressly provides for discharge of un-filed claims. *Id.* Nevertheless, the Opinion found support for discharge of the IRS' claims in several provisions of the Code. *Id.* Its persuasive reasoning was as follows and is adopted herein:

> Section 1328(a) declares, with certain exceptions that do not include any taxes, that a debtor who has completed a chapter 13 plan is to receive a discharge of all debts "provided for by the plan or disallowed under section 502." The Debtors' plan provided for the IRS's claim to be paid, and it was not paid only because no proof of claim was filed. Except when a lack of notice to the creditor is involved, the reported decisions considering the question (in addition to those of the Bankruptcy Court in this case) have ruled such a claim is nevertheless "provided for" by the plan within the meaning of § 1328(a) and is therefore discharged. *See, e.g., Thibodaux v. United States (In re Thibodaux)*, 201 B.R. 827, 830-31 (Bankr. N.D. Ala. 1996); *In re Sorge*, 149 B.R. 197, 202 (Bankr. W.D. Okla. 1993); *Border v. IRS (In re Border)*, 116 B.R. 588, 592-95 (Bankr. S.D. Ohio 1990); *Workman v. United States (In re Workman)*, 108 B.R. 826, 830 (Bankr. M.D. Ga. 1989); *see also Hairopoulos v. United States (In re Hairopoulos)*, 118 F.3d 1240, 1243-46 (8th Cir. 1997) (plan may "provide for" tax claim without specifically naming governmental creditor, but claim cannot be considered "provided for" if creditor does not receive proper notice of chapter 13 proceedings); Keith M. Lundin, *Chapter 13 Bankruptcy*, § 9.16 at 9-29 & n. 142 (2d ed. 1994) & 1997-98 Cum. Supp. at 1032-33 (discussing "provided for" and failure to file proof of claim, and citing additional cases). Furthermore, although it did so after the time for filing claims had expired in this case, Congress amended § 502(b) to overrule cases that had held a claim could not be disallowed in a chapter 13 case on the ground the proof of the claim was not timely filed. *See* Bankruptcy Reform Act of 1994, Pub. L. No. 103-394, § 213, 1994 U.S.C.C.A.N. (108 Stat.) 4106, 4125-26 (codified at 11 U.S.C.A. § 502(b)(9)); H.R. Rep. No. 103-835, at 48 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3340, 3357. So the IRS is asking us to believe that even though Congress enabled taxing authorities to obtain full payment simply by filing a proof of claim and, in 1994, directed the courts to disallow, and thus discharge, the taxes if a late proof of claim is filed for them, Congress also believed the Bankruptcy Code already allowed and intended for it to continue to permit taxing authorities who file no proof of claim at all to wait until the bankruptcy case is over and then try to collect from the debtors. And, rather than doing this in a straightforward manner by including the taxes in § 1328(a) where it specified other debts that

would not be discharged upon completion of a chapter 13 plan, Congress instead created this alternate remedy through silence. We are not convinced. Instead, we believe Congress assumed unfiled claims would be disallowed and discharged, just as late-filed ones now clearly are.

*Id.* at 154.

### Adversary Proceeding Normally Necessary to Avoid Liens

Rule 7001(2) requires an Adversary proceeding to determine the "validity, priority, or extent of a lien or other interest in property" and to obtain a declaratory judgment relating to an applicable lien interest. Fed. R. Bankr. P. 7001(2) and 7001(9), respectively. In *In re Forrest*, 424 B.R. 831, 835 (Bankr. N.D. Ill. 2009) it was held therein that due process entitles the mortgagee to the heightened notice through service of summons and complaint in an adversary proceeding, and debtor cannot instead include a provision in the Chapter 13 plan and expect it to bind a mortgagee who has not voluntarily appeared in the case. *See also In re Stewart*, 408 B.R. 215, 219 (Bankr. N.D. Ind. 2009), interpreting *In re Hanson*, 397 F.3d 482 (7th Cir.2005) ("a chapter 13 plan, *in and of itself,* cannot affect creditors' interests in a circumstance in which those interests are the subject of a separate procedural mechanism under the Bankruptcy Code").

That holding may be viewed in light of a Supreme Court decision interpreting notice requirements under the Fed. R. Bankr. P. In *United States Aid Funds v. Espinosa*, 130 S. Ct. 1367 (2010), the Supreme Court considered the appeal by a student loan creditor of an order confirming a Chapter 13 debtor's plan of reorganization that provided for discharge of part of the debt without a finding of undue hardship. *Id.* at 1373. The debtor filed a plan that proposed to discharge a portion of his student loan debt, but he failed to initiate the adversary proceeding as required by Fed. R. Bankr. P. 7001 for such discharge. *Id.* The creditor received notice of, but did not object to, the plan, and failed to file an appeal after the the plan was confirmed. *Id.* It later received Plan payments due to it. *Id.* The creditor further argued that its due process rights were violated because the debtor failed to serve a summons and complaint as the Fed. R. Bankr. P. require. *Id.* at 1375. The creditor appealed years later and one issue the Supreme Court decided was whether an order confirming discharge of a student loan debt without an adversary proceeding is void. *Id.* at 1373.

17

*Espinosa* agreed that the debtor's failure to serve the creditor with a summons and complaint deprived it of a right granted by a procedural rule. *Id.* at 1378 (citing Fed. R. Bankr. P. 7004(b)(3)). Although the creditor could have objected to this defect had it chosen to, the deprivation was held not to amount to a violation of the creditor's constitutional right to due process. *Id.* "Due process requires notice 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Id.* (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)). The creditor in *Espinosa* received actual notice of the filing and contents of the debtor's plan from the Clerk of the Bankruptcy Court as Fed. R. Bankr. P. 2002 and 3015 require, and later it received Plan payments. *Id.* at 1374, 1378. It could hardly claim lack of "notice and opportunity to be heard" that is the touchstone of procedural due process. The Briscos served a summons and complaint as required by Fed. R. Bankr. P. 7001. (12 A 462 Dkt., No. 3; 12 A 463, Dkt. No. 3)

In addition, the SBA received notice of the filing and contents of the Briscos' plan. (11 B 34774, Dkt. No. 2-1) Treatment of the SBA's liens is found in Paragraph 3.2 of the Briscos' plan, which provides:

> The following claims are secured by collateral that either has no value or that is fully encumbered by liens with higher priority. No payment will be made on these claims on account of their secured status, but to the extent that the claims are allowed, they will be paid as unsecured claims . . . .

(*Id.* at 2, ¶ 3.2) As discussed above, no proof of claim was filed on the SBA's liens and so its claim cannot be an "allowed claim" able to receive a distribution under the plan. But the SBA has received actual notice of the proposed Plan treatment of its liens and that likely satisfies due process requirements. Therefore, although the Briscos' Adversary Complaints must be dismissed, they may still pursue confirmation of their plan of reorganization that if confirmed and successfully completed, might strip off the liens in issue in these Adversary Proceedings.

## CONCLUSION

For reasons stated above, the two Adversary Complaints and Proceedings will be dismissed.

ENTER:

_____
Jack B. Schmetterer
United States Bankruptcy Judge

Dated this 28 day of January, 2013.